UNITED STATES OF AMERICA
DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRYAN SOKOLOWSKI

      plaintiff,                                          Case No. 2:23-cv-29

v.                                                     Hon:

IRONWOOD PLASTICS, INC.

      defendant.
_____/

Attorneys for plaintiff:

MARCOTTE LAW, PLLC
Wendy Marcotte (P74769)
102 W. Washington St., Ste. 217
Marquette MI 49855-4350
(906) 204-5343
*wendy@marcottelaw.us*

NACHT & ROUMEL, P.C.
Nicholas Roumel (P37056)
101 N. Main St., Ste. 555
Ann Arbor MI  48104
734-663-7550
nroumel@nachtlaw.com

.

# COMPLAINT AND JURY DEMAND

Mr. Sokolowski makes his complaint as follows:

### Parties/Jurisdiction/Venue

1. Mr. Bryan Sokolowski ("Mr. Sokolowski") is a resident of Wakefield, Gogebic County, Michigan.

1

2. Ironwood Plastics Ironwood Plastics, Inc. ("Ironwood Plastics") is a Michigan corporation doing business in Michigan, with its resident agent at The Corporation Company, 40600 Ann Arbor Rd. E. Ste. 201, Plymouth, MI 48170.

3. The events giving rise to this lawsuit occurred at Ironwood Plastics' plant in Ironwood, Gogebic County, Michigan, where Mr. Sokolowski was employed.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617, in that this is a civil action arising under the FMLA. This court also has supplemental jurisdiction over Mr. Sokolowski's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in the Western District of Michigan per 28 USC § 1391 (b) (1) and (2), as the cause of action occurred in Gogebic County, Michigan.

**Facts**

6. Mr. Sokolowski began working for Ironwood Plastics as product inspector, an entry level night-shift position, on April 17, 2006.

7. Over the years, Ironwood Plastics recognized Mr. Sokolowski's strong and dependable work ethic by promoting him several times, to include promotion to a management level position.

8. Most recently, in December 2020, he was promoted to the position of Sales Engineer, a position he had already been performing for some time and given a substantial raise.

9. Mr. Sokolowski performed his job capably and was a valued employee.

10. On January 11, 2021, Mr. Sokolowski assisted his manager Dave Zielinski with an audit. After completing his portion of the audit, Mr. Sokolowski was excused and returned to performing his regular work duties.

11. That night, after work, Mr. Sokolowski suffered severe persecutory delusions due to an acute onset of psychosis.

12. As a result, he felt compelled to leave town immediately (in the middle of the night).

13. Before leaving town, he left his sleeping wife Randi Sokolowski the following note:



14. Around 11:30 p.m., he sent a similar text to his manager at Ironwood Plastics, Dave Zielinski, indicating that he needed to take the rest of the week off for a family emergency involving his uncle. He attached a picture of the note he left for his wife to the text.

3

15. Around 11:28 p.m., Mr. Sokolowski texted his brother, requesting that he

> plz take dad down to uncle mick when u get a chance. I'm going to head down, but I need to confirm the number. Voice mesg said he was asking for help. I think he had a mental breakdown or something. U guys might be closer tho. Didn't know you we're in Wausau. I asked for the rest of the week off. Just weird n figured I'd take dad down.

16. When Mrs. Sokolowsi found the note the next morning, she unsuccessfully attempted to contact him.

17. When he did not answer his phone, she reached out to his parents and learned that there was no emergency involving Uncle Mick and that the two had not been in contact for years.

18. She then reached out to Ironwood Plastics and learned that Mr. Sokolowski had also contacted his manager to request time off for a family emergency.

19. Worried for Mr. Sokolowski's safety, she filed a missing person report with the Michigan State Police.

20. Meanwhile, due to his psychosis, Mr. Sokolowski feared he was being tracked and followed by someone. To avoid detection, he abandoned his company issued phone, buried his debit card which contained a chip in a ditch in the snow, and, after driving for hours on back and side roads, eventually left his truck in an inconspicuous location and set off on foot.

21. Around 5:00 p.m. that day, law enforcement located Mr. Sokolowski walking down Highway 73 in Moose Lake, Minnesota.

22. Based on his actions and behavior, he was transported to St. Luke's Hospital in Duluth, Minnesota for a mental health evaluation.

23. Following the evaluation, Mr. Sokolowski was admitted to St. Luke's the evening of January 12, 2021.

24. On or about January 13, 2021, during a phone call with Theresa Turula, Human Resources Manager for Ironwood Plastics, Mrs. Sokolowski confirmed that Mr. Sokolowski was in the hospital and requested that Ms. Turula begin the FMLA process.

25. Mr. Sokolowski was released from St. Luke's on January 14, 2021, but not yet cleared to return to work as he required ongoing outpatient treatment.

26. On January 15, 2021, Mr. Sokolowski contacted Ms. Turula to let her know he had been released from the hospital but was not yet able to return to work.

27. During the conversation, Ms. Turula advised Mr. Sokolowski that he could not return to work until his medical leave was certified and he was cleared to return to work.

28. She also suggested that Mr. Sokolowski was not truthful when he texted his manager about needing time off work. Mr. Sokolowski disagreed but was not ready to provide details as he was not yet recovered and still processing what had occurred.

29. By email that day, Ms. Turula confirmed that she had submitted his request for leave, but that it was incomplete and that he would need to complete the information requested on receipt of the paperwork.

30. In her email, she further advised him that his "leave must be certified by the Dr who treated you at St. Luke's. It cannot be filled out by a local doctor."

31. On January 18, 2021, Ms. Turula followed-up with Mr. Sokolowski by email to confirm he received the paperwork to finish his application for FMLA. In this email she reiterated that this "leave needs to be certified by the Dr who treated you [in the

5

emergency department] and that will likely take some time. Until this happens and a Dr releases you, you cannot return to work."

32. The next day, Mr. Sokolowski advised that he had not yet received any paperwork and that he

> Fully understood that a Dr will need to release me. I am however already meeting with a local doctor here in Ironwood as well for follow-up appointments, so I am not sure if having the local doctor sign off on a release back to work would work as well. I would think it would not be an issue considering all the info and test results were forwarded to Ironwood. I met with the local doctor yesterday.

33. Ms. Turula responded by email: "Hi Bryan it is so good to hear from you, … As stated in earlier emails, the dr who treated you must be the dr who certifies the leave, it cannot be the local doctor who is treating you."

34. Later that week, Mr. Sokolowski received FMLA paperwork dated January 20, 2021, from Mutual of Omaha.

35. Mr. Sokolowski repeatedly attempted to obtain certification from the emergency room doctor who treated him at St. Luke's to no avail.

36. Based on these difficulties, Mr. Sokolowski requested and received additional time to secure the required certification.

37. Meanwhile, the morning of January 26, 2021, while still on medical leave and not yet released to return to work, Ms. Turula interviewed Mr. Sokolowski by phone regarding concerns that he had not been truthful with Mr. Zielinski when he texted him the evening of January 11.

38. Mr. Sokolowski cooperated fully with the interview and truthfully explained exactly what had occurred.

39. Following his explanation, Ms. Turula asked Mr. Sokolowski to obtain and provide copies of the police reports, as it would be easier for him to get copies and would enable him to return to work sooner.

40. Mr. Sokolowski agreed to do so and forwarded copies of the police reports to Ms. Turula that afternoon.

41. The police reports corroborated Mr. Sokolowski's explanation.

42. Following multiple failed attempts to get a certification from the doctor that treated him at St. Luke's, on or about February 10, 2021, Mr. Sokolowski submitted a valid and complete FMLA certification from his primary care provider, who had been treating him locally following his release from the hospital.

43. That same day, his primary care provider released him to return to work with no restrictions effective Monday, February 15, 2021.

44. During a phone call with Ms. Turula and Mr. Zielinski on February 15, 2021, Mr. Sokolowski was informed that he could no longer be trusted to perform his job. Accordingly, effective immediately, he was being removed from his Sales Engineer position.

45. Mr. Sokolowski was then given two options: accept an entirely different position on the plant floor with a 20% reduction in pay or accept $10,000 in severance.

46. Humiliated, Mr. Sokolowski could not bring himself to accept the demotion, resulting in his constructive discharge.

## LEGAL ALLEGATIONS

### COUNT I
### Interference in Violation of the Family and Medical Leave Act
### 29 U.S.C. 2615(a)(1)

47. Ironwood Plastics is an employer covered by the FMLA pursuant to 29 U.S.C. §2601 et seq. because it is a private business that employed fifty or more employees for each working day for at least twenty workweeks in the year prior to Mr. Sokolowski's leave.

48. Mr. Sokolowski is an FMLA-eligible employee because he was employed by Ironwood Plastics for over 14 years prior to requesting FMLA leave and had been employed by Ironwood Plastics for over 1,250 hours in the twelve-month period prior to his request.

49. Mr. Sokolowski was entitled to FMLA leave because he was hospitalized and required follow-up treatment for acute psychosis.

50. In accordance with the FMLA, Mr. Sokolowski's wife notified Ironwood Plastics that he had been hospitalized and would need to take leave.

51. Ironwood Plastics engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Mr. Sokolowski's rights provided under the Act.

52. Among other things, Ironwood Pastics interfered with Mr. Solowski's FMLA rights by repeatedly and erroneously informing him that he was required to provide a medical certification from the doctor who treated him at St. Luke's and that a certification from his local treating provider was not sufficient, resulting in an initial denial of his application for FMLA leave on February 9, 2021.

53. Additionally, Ironwood Plastics interfered with Mr. Sokolowski's right to FMLA leave by interviewing him on January 26, 2021, before he had been released to return to work following a sudden onset of acute psychosis.

54. Finally, Ironwood Plastics denied Mr. Sokolowski a benefit to which he is entitled under the FMLA in that it refused to reinstate him to the Sales Engineer position held immediately prior to his medical leave.

55. As a direct and proximate result of Ironwood Plastics' wrongful acts and omissions, Mr. Sokolowski has suffered and continues to suffer substantial losses, including expenses related to additional medical treatment and past and future lost wages and benefits. Mr. Sokolowski is also entitled to liquidated damages and attorneys' fees and costs, and other damages as recoverable by law.

## COUNT II
### Retaliation in Violation of the Family and Medical Leave Act
### 29 U.S.C. §2615(a)(2)

56. Mr. Sokolowski incorporates the preceding paragraphs.

57. Mr. Sokolowski exercised his FMLA rights by taking medical leave from his job from January 12, 2021, through February 14, 2021.

58. Mr. Sokolowski was qualified for his position and had performed his job duties effectively prior to the acts complained of herein.

59. Mr. Sokolowski suffered an adverse employment action when Ironwood Plastics refused to reinstate him to his Sales Engineer position.

60. Ironwood Plastics' alleged reason for refusing to reinstate him to his former position is pretextual and baseless. Ironwood Plastics refused to reinstate Mr.

9

Sokolowski because he took medical leave and was therefore unavailable during an important audit for a potential new customer.

61. Mr. Sokolowski's FMLA leave was a factor in Ironwood Plastics's decision not to reinstate him in his Sales Engineer position and his constructive discharge.

62. Ironwood Plastics' conduct constitutes unlawful retaliation against Mr. Sokolowski in violation of his rights under the FMLA. 29 U.S.C. §2615(a).

63. As a direct and proximate result of Ironwood Plastics' wrongful acts and omissions, Mr. Sokolowski has suffered and continues to suffer substantial losses, including expenses related to additional medical treatment and past and future lost wages and benefits. Mr. Sokolowski is also entitled to liquidated damages and attorneys' fees and costs, and other damages as recoverable by law.

### COUNT III
### Discrimination Under the Michigan Persons with Disabilities Civil Rights Act
### MCL 37.1101

64. Mr. Sokolowski incorporates the preceding paragraphs.

65. Ironwood Plastics is an employer and Mr. Sokolowski is an employee as defined by the Michigan Persons with Disabilities Civil Rights Act ("PDCRA").

66. On or about January 12, 2021, Mr. Sokolowski was hospitalized for acute psychosis, a qualifying disability under the PDCRA.

67. Following his release from the hospital, Mr. Sokolowski kept Ironwood Plastics informed of his medical status and provided documentation related to his condition.

68. Effective February 15, 2021, Mr. Sokolowski was released to return to work with no restrictions, having successfully managed his condition with ongoing treatment and daily medication.

69. Citing "trust" issues based on his non-violent actions while off-duty and experiencing acute psychosis, Ironwood Plastics notified him that it was removing him from his Sales Engineer Position effective immediately.

70. His only option to remain employed was to accept a position he had held 7-8 years (and several promotions) before on the production floor, with a substantial reduction in pay.

71. Humiliated, Mr. Sokolowski determined that constructive discharge was his only option.

72. Ironwood Plastics' stated reasons for removing Mr. Sokoloski from his Sales Engineer Position are pretextual and baseless and evidence management's misunderstanding and distrust of employees who suffer from mental health conditions.

73. Mr. Sokolowski's mental health was a determining factor in Ironwood Plastics' decision to remove him from his position, resulting in his constructive discharge.

74. Ironwood Plastics and its agents violated the PDCRA by removing him from his Sales Engineer position, resulting in his constructive discharge, because of an actual or perceived mental impairment that caused his manager Mr. Zielinski to no longer trust him.

75. As a direct and proximate result of Ironwood Plastics' unlawful actions, Mr. Sokolowski has suffered and continues to suffer substantial losses, including

11

expenses related to additional medical treatment and past and future lost wages and benefits, emotional distress damages, mental anguish, and attorney fees and costs.

## Jury Demand

Mr. Sokolowski demands a jury trial.

## Relief Requested

*W H E R E F O R E*   Mr. Sokolowski requests this honorable court grant him the following relief:

    A.    Accept jurisdiction over this matter;

    B.    Award Mr. Sokolowski economic damages for his past and future loss of wages and benefits, plus interest;

    C.    Award Mr. Sokolowski liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

    D.    Award Mr. Sokolowski non-economic damages for emotional distress and mental anguish;

    E.    Order Ironwood Plastics(s) to reinstate Mr. Sokolowski to a position comparable to his former position or, in lieu of reinstatement, award him front pay (including benefits);

    E.    Award to Mr. Sokolowski all costs and reasonable attorneys' fees incurred in connection with this action; and

    F.    Grant Mr. Sokolowski such additional or alternative relief as the Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Attorneys for Plaintiff: |
|  | *s/Wendy Marcotte* |
| February 8, 2023 | Wendy Marcotte |
|  | *s/Nicholas Roumel* |
| February 8, 2023 | Nicholas Roumel |